BEFORE THE
UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

In re: Wal-Mart Herbal Supplements Litigation

MDL-_____

PLAINTIFFS MERCEDES TAKETA'S AND MICHELL FINE'S MEMORANDUM IN SUPPORT OF MOTION FOR TRANSFER OF ACTIONS TO THE NORTHERN DISTRICT OF CALIFORNIA FOR CONSOLIDATION OF ALL PRETRIAL PROCEEDINGS PURSUANT TO 28 U.S.C. § 1407

I.   INTRODUCTION

Mercedes Taketa and Michelle Fine, Plaintiffs in the case *Mercedes Taketa and Michelle Fine, individually and on behalf of themselves, all others similarly situated, and the general public v. Wal-Mart Stores, Inc.*, 3:15-cv-00542 (N.D. Cal.), hereby file this Memorandum of Law in Support of their Motion for Consolidation and Transfer of proceedings under 28 U.S.C. § 1407.

The Scheduled Actions that Plaintiffs seek to consolidate are consumer class actions against Wal-Mart Stores, Inc. ("Wal-Mart"). Wal-Mart sells herbal supplements at its retail stores across the country under the generic brand name "Spring Valley." The Spring Valley supplements at issue are Ginkgo Biloba, St. John's Wort, Ginseng, Garlic, Echinacea, and Saw Palmetto ("the Spring Valley Supplements"). *See* Declaration of Ronald A. Marron in Support of Motion to Transfer ("Marron Decl."), *Exs.* 2-6. All of the Scheduled Actions present the same common issues. *Id.* Do the Spring Valley Supplements actually contain the advertised herbal ingredients and are they adulterated with undisclosed ingredients? *Id.* Each Scheduled Action

1

references the New York Attorney General's investigation into the herbal supplement industry. *Id.*

On February 2, 2015, New York Attorney General Eric Schneiderman sent a cease and desist notification letters to Wal-Mart, Target Corporation ("Target"), Walgreen Company ("Walgreens"), and General Nutrition Corporation ("GNC") informing those companies that their generic herbal supplements are misbranded because they either contain no active ingredients or that they are adulterated with undisclosed ingredients. The letter to Wal-Mart stated:

> By using established DNA barcoding technology, analytic testing disclosed that all of the tested [Spring Valley] dietary supplement products were either unrecognizable or a substance other than what they claimed to be, and therefore fairly constitute contaminated or substituted products. Four (4) percent of the tests yielded DNA matching the product label; 40% tested for botanical material other than what was on the label; and 56% yielded no plant DNA at all.

*See* Marron Decl., *Ex.* 1.

Based on Attorney General Schneiderman's investigation, a slew of class action lawsuits have now been filed across the country. On February 13, 2015, a MDL transfer motion was filed with this Panel seeking to consolidate all of the pending herbal supplement class actions against Walgreens into the Northern District of Illinois. *See In re Walgreens Herbal Supplements Litig.*, MDL No.2619. This transfer motion now seeks to consolidate all of the class action lawsuits against Wal-Mart into one proceeding in the United States District Court for the Northern District of California, Oakland Division.

## II.   THE SCHEDULED ACTIONS
1. *Taketa et al. v. Wal-Mart Stores, Inc.*, **No. 3:15-cv-00542 (N.D. Cal.)**

This was the <u>*first*</u> class action lawsuit against Wal-Mart that was filed on February 4, 2015. *See Taketa* Compl., Marron Decl., ¶ 4, Ex. 2. The case is currently assigned to the

Honorable Magistrate Judge Donna M. Ryu. No responsive pleading has yet been filed by Defendant Wal-Mart.

2. *De La Torre et al. v. Wal-Mart Stores, Inc.*, **No. 15-cv-00557 (N.D. Cal.)**

The *De La Torre* class action against Wal-Mart was filed on February 5, 2015. *See De La Torre* Compl., Marron Decl., ¶ 5, Ex. 3. The case is currently assigned to the Honorable Magistrate Judge Nathanael M. Cousins. No responsive pleading has yet been filed by Defendant Wal-Mart.

3. *Sparks v. Wal-Mart Stores, Inc.*, **No. 5:15-cv-05031 (W.D. Ark.)**

The *Sparks* class action against Wal-Mart was filed on February 4, 2015. *See Sparks* Compl., Marron Decl., ¶ 6, Ex. 4. The case is currently assigned to the Honorable Judge Timothy L. Brooks. No responsive pleading has yet been filed by Defendant Wal-Mart.

4. *Figeiredo et al. v. Wal-Mart Stores, Inc.*, **No. 4:15-cv-00249 (E.D. Mo.)**

The *Figeiredo* class action against Wal-Mart was filed on February 6, 2015. *See Figeiredo* Compl., Marron Decl., ¶ 7, Ex. 5. The case is currently assigned to the Honorable Judge Rodney W. Sippel. No responsive pleading has yet been filed by Defendant Wal-Mart.

5. *Shahrashian v. Wal-Mart Stores, Inc.*, **No. 2:15-cv-00978 (C.D. Cal.)**

The *Shahrashian* class action against Wal-Mart was filed on February 10, 2015. *See Shahrashian* Compl., Marron Decl., ¶ 8, Ex. 2. The case is currently assigned to the Honorable Judge Stephen V. Wilson. No responsive pleading has yet been filed by Defendant Wal-Mart. Although the Shahrashian complaint also names Target Corporation, General Nutrition Company, and Walgreen Company as defendants, Plaintiff Shahrashian only purchased herbal supplements from Wal-Mart. *See* Marron Decl, ¶ 8, Ex. 6 at ¶ 3.

### III. ARGUMENT

Transfer for coordinated or consolidated pretrial proceedings is appropriate where federal civil actions present "common questions of fact" and transfer will serve "the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407. Both criteria for transfer are satisfied here.

#### A. The Scheduled Actions Have Common Factual and Legal Issues

All of the Scheduled Actions clearly present common questions of fact. Each complaint alleges that Wal-Mart's Spring Valley Supplements do not actually contain the advertised herbs and that the supplements are adulterated with undisclosed ingredients and contaminants. Each complaint also present common legal issue because the Plaintiffs in each case are asserting claims for violations of consumer protection statutes and deceptive business practices. Moreover, each of the Scheduled Actions proposes a nationwide or multistate class of consumers. Each Scheduled Action undeniably presents common factual and legal issues.

#### B. Coordination or Consolidation Will Serve the Interests of the Courts, the Parties, and the Witnesses

Transferring the Scheduled Actions for pretrial proceedings will significantly reduce the burden on the federal courts, the parties, and the witnesses involved. Without transfer, the federal court system will be forced to administer—and the parties will be forced to litigate—several similar actions on different pretrial schedules. The actions allege similar legal violations and necessarily require overlapping factual inquiries. Discovery in each will require much of the same information from Wal-Mart and Wal-Mart's third party manufactures and suppliers.

Transferring the Scheduled Actions to a single judge will preserve judicial resources by avoiding the need for several federal judges in multiple different districts to address identical legal issues and similar factual patterns. *See, e.g., In re Union Pac. R.R. Co. Empl. Practices*

*Litig.*, 314 F. Supp. 2d 1338, 1384 (J.P.M.L. 2004) (holding that centralization is necessary to "conserve the resources of the… judiciary."). Moreover, the actions have all been commenced within the past two weeks, and no discovery has yet to occur in any of the actions. Thus, transfer will save Wal-Mart and its witnesses from duplicative document production, duplicative written discovery responses, redundant depositions, and the significant likelihood of conflicting scheduling obligations. Transfer is appropriate to mitigate these burdens. Additionally, it will save the resources of Plaintiffs' counsel because discovery requests and depositions can be coordinated amongst counsel, thus reducing litigation expenses and attorneys' fees. Any inconvenience to the individual parties does not outweigh the substantial economies centralization offers the litigation as a whole. *See, e.g., In re Crown Life Ins. Premium Litig.*, 178 F. Supp. 2d 1365, 1366 (J.P.M.L. 2001) (noting that "transfer is often necessary to further the expeditious resolution of the litigation taken as a whole.")

    **C. Consolidation Is Necessary for these Class Action Lawsuits**

In cases involving putative class actions, this Panel has frequently noted the importance of avoiding inconsistent class certification rulings. *See, e.g., In re Charlotte Russe, Inc. Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 505 F. Supp. 2d 1377, 1378 (J.P.M.L. 2007) ("Centralization will . . . prevent inconsistent trial rulings, especially with respect to class certification . . . ."); *In re Sugar Indus. Antitrust Litig.*, 395 F. Supp. 1271, 1273 (J.P.M.L. 1975) ("We have consistently held that transfer of actions under Section 1407 is appropriate, if not necessary, where the possibility of inconsistent class determination exists."); *see also* David F. Herr, MULTIDISTRICT LITIGATION MANUAL § 5.24 (2014) ("The reason for the importance of potentially conflicting class actions is fairly clear. The management of the litigation would become exceedingly difficult if similar actions involving overlapping classes were proceeding in

different districts."). Transfer will thus ensure consistent application of Rule 23 and avoid the risk of inconsistent classes.

### D. The Northern District of California, Oakland Division Is the Most Appropriate Forum for Consolidation

In selecting the transferee court, the Panel considers several factors, including, but not limited to, "where the largest number of cases is pending, where discovery has occurred, where cases have progressed furthest, the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 20.131 (2010).

#### *1. The Taketa Action In the Northern District of California was Filed First and Two of the Five Scheduled Actions Are Pending In the Northern District*

Out of all the herbal supplement class actions filed against Wal-Mart, the *Taketa* action was filed first on February 4, 2015. The Northern District of California is also the only district with two pending actions: the *Taketa* action and the *De La Torre* action. These factors weigh in favor of transfer to the Northern District of California. *See In re Rosuvastatin Calcium Patent Litig.*, 560 F. Supp. 2d 1381, 1383 (J.P.M.L. 2008) (transferee district selected primarily because '[s]even of the nine actions, including the first-filed actions, are already pending in that district."); *In re Make-Up Art Cosmetics (M.A.C.) Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 559 F. Supp. 2d 1404, 1405 (J.P.M.L. 2008) (transferee forum appropriate where "[t]wo of the three actions are already pending there, including the first-filed.").

#### *2. The Northern District of California Will Allow for Speedy Disposition of the Scheduled Actions*

6

"The Panel has expressly stated that it will consider docket conditions in selecting a transferee district. If two potential transferee districts have widely different docket conditions, one being current and the other being marked by long delays before trial, the Panel will favor the court with the most current docket." MULTIDISTRICT LITIGATION MANUAL § 6:17 (2014) (Collecting Authority). In evaluating whether to transfer an action because of court congestion, the Ninth Circuit has stated that the "real issue is not whether a dismissal will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket." *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984); *see also Panchias v. Bullock*, No. 2:12-cv-2082 JAM CKD P, 2012 WL 5425393, at *3 (E.D. Cal. Nov. 5, 2012) (explaining that courts in the Ninth Circuit consider "relative court congestion and time of trial in each forum" when considering whether to transfer an action).

Here, the Northern District of California is most convenient of all the districts where the Scheduled Actions are pending. In the Northern District of California, it takes only an average of 7.9 months for a civil action to proceed to trial compared to 12.5 months in the Western District of Arkansas and 8.5 months in the Eastern District of Missouri. *See* Marron Decl., 9, *Ex*. 7. Although it takes 5.3 months from disposition to trial in the Central District of California, that district has significantly more civil actions per judgeship (530 civil actions per judgeship in the Central District of California compared to 421 in the Northern District of California). *See* Marron Decl., 9, *Ex*. 7. Thus, the Northern District of California is the least congested. Additionally, the Northern District of California is the most convenient forum because two of the Scheduled Actions are pending in the Northern District and the Oakland Courthouse is close to two major international airports.

### *3. Judge Ryu is the Ideal Transferee Judge*

The first filed *Taketa* action is currently pending before the Honorable Magistrate Judge Donna M. Ryu. According to her biography, Judge Ryu is a Yale Law School graduate who previously served as a "Clinical Professor of Law at U.C. Hastings College of Law and as Associate Professor and Associate Director of the Women's Employment Rights Clinic of Golden Gate University Law School." *See* http://www.cand.uscourts.gov/dmr. Plaintiffs Taketa and Fine believe that Judge Ryu has the skill and experience to preside over this proposed MDL.

### IV.   CONCLUSION

For the foregoing reasons, Plaintiffs Mercedes Taketa and Michelle Fine respectfully request the Panel to centralize the Scheduled Actions for consolidated proceedings in the United States District Court for the Northern District of California.

Respectfully Submitted,

Dated: February 16, 2015

*/s/ Ronald A. Marron*
By: Ronald A. Marron
**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON
SKYE RESENDES
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

***Attorneys for Plaintiffs and the Proposed Class***