BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

In re: WAL-MART HERBAL           )       MDL No. 2620
SUPPLEMENTS MARKETING AND        )
SALES PRACTICES LITIGATION       )
_____  )

**PLAINTIFF ALEX TRINIDAD'S RESPONSE SUPPORTING TRANSFER AND CONSOLIDATION OF ALL HERBAL SUPPLEMENTS ACTIONS TO THE SOUTHERN DISTRICT OF OHIO PURSUANT TO 28 U.S.C. § 1407**

Alex Trinidad, plaintiff in *Trinidad v. Wal-Mart- Stores, Inc.,* S.D. Ohio No. 1:15-cv-00091, hereby responds to the three pending motions seeking transfer and consolidation under 28 U.S.C. § 1407 filed by Plaintiffs Mercedes Taketa, Michelle Fine, Shane Sparks, George J. Marshall, and Scott Dahlin. [Docs. 1, 5, 10.] Plaintiff Trinidad respectfully requests that the Panel transfer and consolidate all of the related herbal supplement actions of MDL Nos. 2619-2622 to the Southern District of Ohio for coordinated pretrial proceedings.

In their moving papers, each of the moving plaintiffs asks the Panel to transfer and consolidate consumer class action lawsuits currently pending against Defendant Wal-Mart Stores, Inc. ("Walmart"). Those actions – like dozens of virtually identical actions filed against Walgreen Co. ("Walgreens"),[1] Target Corp. ("Target"),[2] and GNC Corp. ("GNC")[3] – were initiated shortly after the New York State Attorney General announced the results of its investigation into the contents of several popular store brands of herbal supplements. According to DNA testing performed by the Attorney General, herbal supplements sold exclusively by Walgreens, Walmart, Target, and GNC (collectively, the "Defendants") consistently contain

---

[1] *See In re Walgreens Herbal Supplements Mktg. and Sales Practices Litig.*, MDL No. 2619.
[2] *See In re Target Corp. Herbal Supplements Mktg. and Sales Practices Litig.*, MDL No. 2622.
[3] *See In re GNC Corp. Herbal Supplements Mktg. and Sales Practices Litig.*, MDL No. 2621.

either unrecognizable ingredients or substances other than what they claim to be and therefore constitute contaminated or substituted products.

Plaintiff Trinidad agrees with the moving plaintiffs that the herbal supplement actions against Walmart are substantially similar and ideal candidates for consolidation and transfer. However, given the overlapping nature of the parties, claims, and allegations, Plaintiff Trinidad submits that the goals of 28 U.S.C. § 1407 (*e.g.,* to avoid duplicative discovery; prevent inconsistent or repetitive rulings; promote efficient management of litigation; and conserve the resources of the parties, counsel, and the courts) would be best served by consolidating <u>all</u> of the related herbal supplement actions against all four Defendants before a single court for pretrial proceedings, not just those asserting claims against Walmart. All of the related cases are premised upon the same unlawful behavior by Defendants, all rely on the results of the DNA testing performed by the New York Attorney General, and all seek legal relief grounded in common legal theories.[4] Notably, many plaintiffs have claims against multiple Defendants. For instance, Plaintiff Trinidad is currently prosecuting parallel actions against Walgreens and Walmart.[5] Other plaintiffs, like Victoria Shahrashian, assert claims against Walmart, Walgreens, Target and GNC in a single action.[6] Because even a cursory review of the pleadings reveals that the legal and complex factual issues to be determined in each of the actions are nearly identical, transfer to a single forum is highly appropriate.

Plaintiff Trinidad contends that the Southern District of Ohio is the most appropriate and convenient forum in which to consolidate the related actions against Walmart, Walgreens,

---

[4] *See In re: Checking Account Overdraft Litig.*, 626 F. Supp.2d 1333, 1334 (J.P.M.L. 2009) (transferring actions involving similar allegations but different plaintiffs and defendants to single district for consolidated pretrial proceedings).

[5] *See Trinidad v. Walgreens*, S.D. Ohio No. 1:15-cv-00090; *Trinidad v. Wal-Mart Stores, Inc.*, S.D. Ohio No. 1:15-cv-00091.

[6] *See Shahrashian v. Wal-Mart Stores, Inc.*, C.D. Cal No. 2:15-cv-978-SVH-MRW.

Target, and GNC. The Southern District of Ohio's convenient location and docket conditions make it the most favorable forum. Although there is no singular geographical focal point for this litigation -- Walgreens, Walmart, Target, and GNC sold the herbal supplements across the nation – the Southern District of Ohio is centrally located between Defendants' respective headquarters in Pennsylvania, Illinois, Minnesota, and Arkansas (where most of the discovery will necessarily focus). Moreover, docket conditions favor the Ohio district, and Judge Michael R. Barrett has substantial experience handling class actions and is uniquely situated to efficiently and effectively handle the consolidated proceedings.

For these reasons, Plaintiff Trinidad requests that the Panel transfer all of the herbal supplement actions at issue in MDL Nos. 2619 (Walgreens), 2620 (Walmart), 2621 (GNC), and 2622 (Target), and any other tag-along actions asserting similar or related claims that may be filed in or removed to the federal courts, to the Southern District of Ohio for consolidated pretrial proceedings.

## I. BACKGROUND

On February 3, 2015, New York State Attorney General Eric T. Schneiderman announced that his office had sent letters to four major retailers, GNC, Target, Walmart, and Walgreens, demanding that they immediately stop the sale of certain popular herbal supplements, including Echinacea, Ginseng, St. John's Wort, and others.[7] The letters explained that the Attorney General's office was investigating an apparent practice by herbal supplement manufacturers of substituting contaminants and fillers in the place of authentic product. Using DNA barcoding technology to examine the contents of herbal supplements, the Attorney General found that GNC, Target, Walmart, and Walgreens were each selling herbal supplements that

---

[7] *See* http://www.ag.ny.gov/press-release/ag-schneiderman-asks-major-retailers-halt-sales-certain-herbal-supplements-dna-tests (last accessed March 5, 2015).

either could not be verified to contain the labeled substance, or which were found to contain ingredients not listed on the labels. More specifically, the letters revealed that, overall, just 21% of the test results from GNC's "Herbal Plus" brand, Target's "Up & Up" brand, Walgreens' "Finest Nutrition" brand, and Walmart's "Spring Valley" brand herbal supplements verified DNA from the plants listed on the products' labels – with 79% coming up empty for DNA related to the labeled content or verifying contamination with other plant material. Attorney General Schneiderman also requested that the companies provide detailed information relating to the production, processing and testing of herbal supplements sold at their stores and the quality control measures they have in place to ensure the quality of their herbal supplement products.

Within days of the Attorney General's announcement, dozens of putative class actions were filed against Walgreen, Walmart, Target, and GNC in jurisdictions across the country. All of the complaints involve substantially the same allegations regarding the Attorney General's investigation and test results, and assert substantially the same claims on behalf of overlapping putative classes of consumers. On February 16, 2015, Plaintiffs Taketa and Fine moved to transfer all of the actions against Walmart to the Northern District of California. [Doc. 1.] Plaintiffs Sparks, Marshall, and Dahlin subsequently moved to transfer the same cases to Western District of Arkansas, arguing, *inter alia*, that Walmart's principal place of business is in Arkansas and many of the witnesses and documents are likely to be present in Arkansas. [Docs. 5, 10.] Similar motions seeking transfer and consolidation of the herbal supplement actions pending against Walgreens,[8] GNC,[9] and Target[10] have likewise been filed. Importantly, some of

---

[8] *See In re Walgreens Herbal Supplements Mktg. and Sales Practices Litig.*, MDL No. 2619.
[9] *See In re GNC Corp. Herbal Supplements Mktg. and Sales Practices Litig.*, MDL No. 2621.
[10] *See In re Target Corp. Herbal Supplements Mktg. and Sales Practices Litig.*, MDL No. 2622.

the actions sought to be consolidated involve multiple Defendants,[11] such that the pending motions seeking Defendant-specific consolidation are irreconcilable.[12]

## II. ARGUMENT

### A. Transferring the Pending Actions for Coordinated Pretrial Proceedings is Appropriate

The principal goals of 28 U.S.C. § 1407 are to avoid duplicative discovery, prevent inconsistent or repetitive rulings, promote efficient management of litigation, and conserve the resources of the parties, counsel, and the courts.[13] These goals are best served by transferring all of the herbal supplement cases for coordinated pretrial proceedings. 28 U.S.C. § 1407 authorizes this Panel to transfer and consolidate two or more civil cases for coordinated pretrial proceedings upon the determination that (i) they "involv[e] one or more common questions of fact," (ii) transfer will further "the convenience of the parties and witnesses," and (iii) transfer "will promote the just and efficient conduct of the action."[14]

Here, Section 1407's requirements for transfer are satisfied. The related class actions against Defendants are based on the same or substantially similar questions of law and fact. In addition, transfer will promote the convenience of the parties and efficiency in the pretrial proceedings by eliminating duplicative discovery and the potential for inconsistent rulings, including determinations on class certification. Indeed, because all of the actions assert complex, yet virtually identical claims and allegations requiring substantial discovery into highly technical

---

[11] *See, e.g., Shahrashian v. Wal-Mart Stores, Inc.*, C.D. Cal No. 2:15-cv-978-SVH-MRW (asserting claims against Walmart, Walgreens, Target, and GNC).

[12] Because an action containing multiple Defendants cannot be transferred to more than one forum, three of the pending motions seeking Defendant-specific consolidation must necessarily be denied.

[13] *See* MANUAL ON COMPLEX LITIGATION § 22.33 at 367 (4th ed. 2004).

[14] 28 U.S.C. § 1407(a); *In re Cutter Labs, Inc. "Braunwald-Cutter" Aortic Heart Valve Prods. Liab. Litig.,* 465 F.Supp. 1295, 1296 (J.P.M.L. 1979).

aspects of Defendants' herbal supplement manufacturing, testing, distribution, and sales procedures, they are ideal candidates for transfer for coordinated or consolidated pretrial proceedings.

1. **The related actions involve common questions of fact.**

The first requirement of Section 1407 – that actions involve common questions of fact – is satisfied. The factual issues to be determined in each of the actions proposed for transfer and coordination arise from the same course of conduct by the Defendants and are, therefore, identical for pretrial purposes.[15] Each complaint alleges that herbal supplements sold by one or more Defendants do not actually contain the advertised ingredients and instead contain contaminants, substitutes, and fillers. Each complaint also presents common legal issues because plaintiffs all assert claims for violations of consumer protection statutes and deceptive business practices. Additionally, the cases present common questions of fact regarding the Attorney General's investigation, testing methodology, and results.

2. **Consolidating the actions furthers the convenience of parties and witnesses.**

Consolidation of the related class actions would, likewise, satisfy the second requirement of Section 1407 because it will serve the convenience of the parties and witnesses. Discovery in all of the related actions will focus on documents, witnesses, and other evidence pertaining to Defendants' testing, development, and marketing of their herbal supplements, Defendants' knowledge of the contaminants, substitutes, and fillers contained in the herbal supplements, and any steps Defendants took to address any known problems with the herbal supplements. Discovery will also necessarily focus on the New York Attorney General's investigation and testing of the herbal supplements, and Defendants' responses to the Attorney General's demands.

---

[15] *See In re Publ'n Paper Antitrust Litig.*, 346 F.Supp. 2d 1370, 1371 (J.P.M.L. 2004).

Notably, the DNA testing at issue is complex and highly technical and will require substantial discovery and entail significant expense. Because these actions arise from a common core of factual allegations, there is a strong likelihood of duplicative discovery demands and redundant depositions. Additionally, many of the actions seek to certify nationwide and/or multistate classes of consumers. Defendants will likely raise the same class certification objections and discovery objections, seek the same protective orders, and assert the same privileges in each case. If the Panel consolidates and transfers the cases, the parties will coordinate their efforts and save both time and money.

Plaintiff Trinidad anticipates that additional actions will be filed as more herbal supplement purchasers learn of the Attorney General's investigation and testing results. Coordination of the actions would enable a single District Judge to establish a single pretrial schedule, thereby minimizing inconvenience to witnesses and expense to parties.

**3.    Transfer and consolidation will promote just and efficient conduct of the related actions.**

For these same reasons, transfer and consolidation of the herbal supplement cases would also promote the just and efficient adjudication of the actions. The actions all raise common questions of fact and law. The plaintiffs in each action will likely seek to depose many of the same individuals and request production of a substantially similar set of documents from Defendants and the New York Attorney General. Failure to consolidate these actions would, therefore, result in unnecessary and duplicative discovery, witnesses would have to appear for multiple depositions, and Defendants would have to negotiate and produce multiple sets of overlapping documents. The common issues involved are complex and highly technical and will

necessarily require extensive use of experts and a substantial amount of expensive discovery.[16] Consolidation and coordination of the actions would avoid this needless waste of resources and confer benefits upon both the plaintiffs as well as Defendants.[17]

Another important consideration is the possibility of inconsistent rulings on pretrial issues, which may have res judicata or collateral estoppel effects on other cases.[18] Here, the fact that many of the actions seek to certify overlapping classes gives rise to the possibility of inconsistent rulings on certification issues, and therefore weighs heavily in favor of transfer and consolidation.[19] Defendants are also likely to present the same arguments in pretrial dispositive motions, and the same discovery objections and privileges, in each of the cases. Inconsistent rulings on those motions would pose a significant problem. Therefore, to avoid the possibility of inconsistent rulings (including inconsistent determinations on class certification) and duplicative discovery, as well as needless taxation on the judicial system, the actions should be consolidated before the same court.[20]

---

[16] *See In re Clark Oil & Refining Corp. Antitrust Litig.*, 364 F.Supp 458, 459 (J.P.M.L. 1973) (ordering consolidation of two actions because "the greater complexity of factual issues presented here and the presence of competing requests for class designation distinguish this litigation from the *Scotch Whiskey* cases and make transfer necessary in order to avoid duplication of discovery and eliminate the possibility of conflicting pretrial rulings"); *In re Nissan Motor Corp. Antitrust Litig.*, 352 F.Supp. 960, 961 (J.P.M.L. 1973) (similar); *In re CBS Licensing Antitrust Litig.*, 328 F.Supp. 511, 512 (J.P.M.L. 1971) (similar).

[17] *See In re Univ. Serv. Fund Tel. Billing Prac. Litig.*, 209 F.Supp. 2d 1385, 1386 (J.P.M.L. 2002).

[18] *See In re Enron Securities Derivative & ERISA Litig.*, 196 F.Supp.2d 1375 (J.P.M.L. 2002).

[19] *See, e.g., In re Charlotte Russe, Inc. Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 505 505 F.Supp.2d 1377, 1378 (J.P.M.L. 2007 ("Centralization will … prevent inconsistent trial rulings, especially with respect to class certification …."); *In re Roadway Exp., Inc. Employment Practices Litig.*, 384 F. Supp. 612, 613 (J.P.M.L. 1974).

[20] *See Neurontim*, 342 F.Supp. 2d at 1351; *Ephedra Prods. Liab. Litig.,* 314 F.Supp 2d at 1375; *In re European Rail Pass Antitrust Litig.*, No. 1386, 2001 U.S. Dist. LEXIS 1417, at *3 (J.P.M.L. Feb. 7, 2001) (transferring related actions to single district to "eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary").

**B. The Related Actions Should Be Transferred to the Southern District of Ohio for Consolidated and Coordinated Pretrial Proceedings Before Judge Michael R. Barrett.**

In selecting a transferee district, this Panel generally considers "where the largest number of cases is pending, where discovery has occurred, where cases have progressed the furthest, the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges."[21] At issue here are (at least) forty-one cases filed within days of each other in (at least) seventeen jurisdictions. As these cases are still in their infancy, no substantive discovery or briefing has taken place in any of them. Accordingly, many of the traditional factors considered by the Panel (*e.g.,* first filed, furthest progressed) simply do not apply.

However, several important considerations collectively weigh in favor of transferring the related actions to the Southern District of Ohio[22] over the other proposed jurisdictions. These include the Defendants' locations,[23] the locations of relevant documents,[24] and the centrality of the location for the convenience of the parties and the location of witnesses.[25] There is no singular geographical focal point for this litigation because Defendants sold herbal supplements across the nation. However, the Southern District of Ohio is centrally located between Walgreen's headquarters in Deerfield, IL to the west, GNC's headquarters in Pittsburgh, PA and

---

[21] MANUAL ON COMPLEX LITIGATION § 20.131 (4th ed. 2004).

[22] Plaintiff is aware of at least three actions pending in the Southern District of Ohio: (1) *Trinidad v. Walgreen*, S.D. Ohio No. 1:15-cv-00090 (Hon. Michael R. Barrett presiding); (2) *Trinidad v. Wal-Mart Stores, Inc.*, S.D. Ohio No. 1:15-cv-00091 (same); and (3) *Angiulli v. Walgreen Co., GNC Holdings, Inc., Target Corp., Wal-Mart Stores, Inc.*, S.D. Ohio No. 1:15-cv-00156 (same). However, Defendants are better situated to inform the Panel whether there are any other related actions in the district.

[23] *See In re "Factor VIII or IX Concentrate Blood Prods." Liab. Litig.*, 853 F.Supp 454, 455 (J.P.M.L. 1993).

[24] *See In re Air Crash Disaster Near Coolridge, Arizona*, 362 F.Supp 572, 573 (J.P.M.L. 1973).

[25] *See In re Wheat Farmers Antitrust Class Action Litig.*, 366 F.Supp 1087, 1088 (J.P.M.L. 1973).

the New York Attorney General's offices to the east, Target's headquarters in Minneapolis, MN to the north, and Walmart's headquarters in Bentonville, AR to the south. Since those are the locations where most of the parties' discovery will necessarily focus, this factor weighs heavily in favor of transferring the related cases to Ohio. Moreover, the Southern District of Ohio and surrounding region are serviced by multiple airports and all major airlines, and would be accessible and convenient for all parties, witnesses, and attorneys.

In contrast, it is difficult to find locations in the contiguous United States more remote to the Defendants and witnesses than several of the other proposed venues. For instance, the Northern District of California and Southern District of Florida[26] are more than a thousand miles from the nearest Defendant, making them decidedly inconvenient locations for the purposes of witnesses and discovery. And while the Western District of Arkansas is home to Walmart's principal place of business, it is geographically remote to the other Defendants, witnesses, and plaintiffs located across the country. Nor is the Western District of Arkansas easily accessible; its sole airport, Northwest Arkansas Regional Airport, ranks 112th in the country in terms of enplanements and offers only a fraction of flight options offered by larger airports like the Cincinnati/Northern Kentucky International Airport.[27]

And although the Northern District of Illinois[28] is centrally located and easily accessible, current docket conditions favor transfer and consolidation in the Southern District of Ohio. The Panel has noted that absence of MDL activity in a particular location is a factor in favor of

---

[26] *See* Plaintiffs' Motion for Transfer of Actions to the Southern District of Florida Pursuant to 28 U.S.C. § 1407 For Consolidated Pretrial Proceedings, MDL No. 2621 (Doc. No. 1) (supporting consolidation of all cases against GNC in the Southern District of Florida).

[27] http://www.faa.gov/airports/planning_capacity/passenger_allcargo_stats/passenger/media/cy13-commercial-service-enplanements.pdf

[28] *See, e.g.,* Plaintiff Hollis' Motion for Consolidation and Transfer Under 28 U.S.C. § 1407, MDL No. 2619 (Doc. No. 1) (supporting consolidation of all cases against Walgreens in the Northern District of Illinois).

10

transfer to that jurisdiction.[29] Judge Barrett is not presiding over MDL proceedings at this time.[30] Moreover, seventeen MDLs are currently pending in the Northern District of Illinois, while only two are pending in the Southern District of Ohio.[31] This suggests that the Northern District of Illinois may not have the judicial and clerical resources necessary to accommodate another MDL. Also, Federal Court Management Statistics (September 2014)[32] reflects that the Southern District of Ohio has fewer cases pending per Judgeship (514) compared with the Northern District of Illinois (585). More importantly, the "weighted filing" count – the primary basis upon which the Administrative Office of the Courts and Senate Judiciary Committee assess the need for new Judgeships – also favors transfer to the Southern District of Ohio. As of September 30, 2014, the Ohio district had 466 weighted filings per Judgeship, while Northern Illinois had 529 weighted filings per Judgeship.[33] Similarly, the Southern District of Ohio District has a 25.7 month average time between filing and trial of civil cases. This average compares favorably to the Northern District of Illinois (35.3 months).[34]

This MDL will unquestionably require a considerable amount of time and attention from the transferee court. Judge Barrett and his capable staff have the availability and experience to efficiently handle this complex litigation.

---

[29] *See, e.g., In re Pilgrim's Pride Fair Labor Standards Litig.*, 489 F.Supp.2d 1381 (J.P.M.L. 2007).
[30] *See* http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-February-17-2015.pdf
[31] *Id*.
[32] *See* http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/district-courts-september-2014.aspx
[33] *Id*.
[34] *Id*.

## III. CONCLUSION

For the reasons stated above, Plaintiff Trinidad respectfully requests that this Panel transfer all of the actions at issue in MDL Nos. 2619-2622, and any subsequently filed class action cases raising similar claims, to the Southern District of Ohio for coordinated pretrial proceedings before the Honorable Michael R. Barrett.

Dated: March 9, 2015

Respectfully submitted,

/s/Jeffrey S. Goldenberg
Jeffrey S. Goldenberg (0063771)
Todd B. Naylor (0068388)
Robert B. Sherwood (0084363)
Goldenberg Schneider, LPA
One West Fourth Street, 18th Floor
Cincinnati, Ohio 45202
Phone: (513) 345-8291
Fax: (513) 345-8294
jgoldenberg@gs-legal.com
tnaylor@gs-legal.com
rsherwood@gs-legal.com

Christian A. Jenkins (0070674)
Minnillo & Jenkins, Co. LPA
2712 Observatory Avenue
Cincinnati, Ohio 45208
Phone: (513) 723-1600
Fax: (513) 723-1620
cjenkins@minnillojenkins.com

James C. Shah
Nathan C. Zipperian
Shepherd, Finkelman, Miller & Shah, LLP
35 E. State Street
Media, PA 19063
Phone: (610) 891-9880
Fax: (610) 891-9883
jshah@sfmslaw.com
nzipperian@sfmslaw.com

Beth E. Terrell
Toby J. Marshall
Terrell Marshall Daudt & Willie, PLLC
936 N. 34th Street, Suite 300
Seattle, Washington 98103
Phone: (206) 816-6603
Fax: (206) 319-5450
bterrell@tmdwlaw.com
tmarshall@tmdwlaw.com

Jayne A. Goldstein
Pomerantz LLP
1792 Bell Tower Lane, Suite 203
Weston, Florida 33326
Phone: (954) 315-3454
Fax: (954) 315-3455
jagoldstein@pomlaw.com

Matthew J. Zuchetto, WSBA #33404
Boyd M. Mayo, WSBA #43752
The Scott Law Group, P.S.
926 W. Sprague Avenue, Suite 680
Spokane, Washington 99201
Telephone: (509) 455-3966
scottgroup@me.com